UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| v. : | CRIMINAL NO. 07-785 (JLL) |
| GEOFFRY KOUEVI : | **ORDER** |
| Defendant. : | |

**LINARES**, District Judge.

Defendant Geoffry Kouevi having moved to suppress statements made to ICE agents; and the Court having held a suppression hearing; and the Court having considered the briefs presented as well as the testimony of the witnesses and the documentary evidence; and for the reasons set forth on the record, attached hereto as Exhibit A; and for good cause shown;

**IT IS** on this **21st day** of **July, 2009**,

**ORDERED** that Kouevi's motion to suppress (Docket Entry No. 65) is **DENIED.**

**IT IS SO ORDERED**.

/s/ Jose L. Linares
United States District Judge

1

# EXHIBIT A

1

```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW JERSEY
                       Criminal No. 07-785(JLL)

    - - - - - - - - - - - - - -X
                                :
    UNITED STATES OF AMERICA    :     TRANSCRIPT OF
                                :       PROCEEDINGS
              -vs-              :         OPINION
                                :
    GEOFFRY KOUEVI, a/k/a KANGNI,:     July 21, 2009
                                :
           Defendant.           :
                                :
    - - - - - - - - - - - - - -X     Newark, New Jersey




    B E F O R E:

                   THE HONORABLE JOSE L. LINARES,
                 UNITED STATES DISTRICT COURT JUDGE







        Pursuant to Section 753 Title 28 United States Code, the
    following transcript is certified to be an accurate record
    as taken stenographically in the above-entitled proceedings.
    s/Phyllis T. Lewis, CSR, CRR
    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
                    PHYLLIS T. LEWIS, C.S.R., C.R.R.
         Official Court Reporter - United States District Court
            P.O. Box 25588, Newark, New Jersey  07101
                          (732) 735-4522
```

PHYLLIS T. LEWIS, CSR, CRR, OFFICIAL COURT REPORTER

1     THE COURT: This matter comes before the Court by
2  way of a motion to suppress the statement of Geoffrey
3  Kouevi, the defendant in this case.
4     There were several documents that were marked into
5  evidence during the suppression hearing that took place on
6  Monday, July 20th, 2009. Those items were as follows:
7     First, there was a U.S. Immigration and Customs
8  Enforcement Statement of Rights form signed by the
9  defendant, as well as Agent Joseph Salavarria, who testified
10 in this matter. That was marked into evidence as
11 Government's Exhibit JDS-3. The Court notes that it has
12 examined this document. Next to the question that reads:
13 "Do you understand your rights? (Initials)," the defendant
14 placed his initials.
15    Also next to the line: "Do you wish to waive your
16 right? (Initials)," again the defendant placed his initials
17 and signed below it.
18    The form additionally indicates that the rights
19 were read to the defendant, and that the defendant
20 acknowledged that he understood same.
21    The Statement of Rights submitted as Government's
22 Exhibit JDS-3 coincides with the testimony of Agent
23 Salavarria in the way that the issue of the Statement of
24 Rights was addressed with the defendant.
25    Also marked into evidence were the handwritten

1   notes of Agent Salavarria, which were marked into evidence
2   as Government's Exhibit JDS-2, as well as his typewritten
3   report, which was placed into evidence as Government's
4   Exhibit JDS-1.  The Court has also read both of those
5   documents.
6          I have also been given documentary evidence in this
7   case, two pieces of paper marked Exhibits HG-6 and HG-7.
8   Both of those have to do with Payless ShoeSource,
9   defendant's employer.
10          The other witness that testified on behalf of the
11  Government was Marlon Betances, who is an employee and
12  supervisor at Payless ShoeSource.
13          The document marked as Exhibit HG-6 is an RSP
14  Booklet, Payless ShoeSource questionnaire, containing a
15  number of questions, specifically 142 questions, which the
16  defendant was asked to complete.  The supervisor testified
17  that employees are required to answer these questions all of
18  which are in English, and the defendant has acknowledged
19  that he had to complete this questionnaire.
20          There is also a Payless ShoeSource document marked
21  as Government's Exhibit HG-7, which sets forth the dates
22  that the defendant underwent different types of training
23  throughout his employment.
24          Marked in evidence by the defense as the last piece
25  of documentary evidence was Supplemental Hearing Defendant's

1   Exhibit No. 1.  That exhibit is the "Consular Notification
2   and Access Instructions for Federal, State and Local Law
3   Enforcement and Other Officials."  Basically that document
4   includes a summary of the requirements pertaining to foreign
5   nationals, steps that are to be followed when a foreign
6   national is arrested or detained, and the detailed
7   instructions on the treatment of foreign nationals.  It also
8   contains the information about who is responsible for
9   notification of arrests and detentions.  It contains the
10  statements that are to be read to foreign nationals,
11  including translations of those statements, and it contains
12  in the back of it copies of the articles that defendant
13  claims that are applicable here, including Article 36, which
14  deals with Communication and Contact with Nationals of the
15  Sending State.  Among the things that are indicated by the
16  Article is that "Consular officers shall be free to
17  communicate with nationals of the sending State and to have
18  access to them.  Nationals of the sending State shall have
19  the same freedom with respect to communications with and
20  access to the consular officers of the sending State."
21          Also, "if he so requests, the competent authorities
22  of the receiving State shall, without delay, inform the
23  consular post of the sending State, if a national of that
24  State is arrested or committed to prison or to custody
25  pending trial or is detained in any other manner." In any

1  event, the Court has reviewed that document as well.

2  Furthermore, the Court has taken into consideration
3  the arguments by counsel, the briefs that were submitted in
4  anticipation for the motion for suppression of Mr. Kouevi's
5  statement and the testimony of the witnesses that testified.

6  It is clear that the main issue in this case is
7  whether the evidence that was produced establishes by a
8  preponderance of the evidence to this Court that Mr. Kouevi
9  was sufficiently proficient in English, such that he
10 understood the rights that were given to him and knowingly
11 and voluntarily waived those rights, instead electing to
12 communicate with law enforcement officials.

13 In conducting that analysis, the Court acknowledges
14 that it should take into account many different factors. As
15 an initial matter, however, the defense attorney has
16 acknowledged that this is not a situation where he is
17 challenging the voluntariness of the statement by the
18 defendant. The real crux of the defense objection to the
19 statement is that they view the statement as not being a
20 knowing waiver of a right that was understood by the
21 defendant.

22 In determining whether a defendant knowingly and
23 intelligently waived his rights, I do consider the fact that
24 the defendant may have had some language difficulties that
25 could have affected his custodial interrogation. But having

1   said that, the evidence in this case does indicate that
2   although the defendant may have had some language
3   difficulties, they were not of the type that affected his
4   ability to fill out questionnaires in English in the past
5   relating to job activities, driver's license, or driver's
6   license-related questions, or to participate in job
7   interviews and complete surveys.
8       Although the defendant makes an argument that it
9   would have been preferable to have given him his rights or
10  have read him his rights or explained his rights in his
11  preferred language, which in this case is French, the fact
12  that all of the above was communicated in English does not
13  automatically translate into a constitutional violation.
14  Here, the record indicates that the defendant was in the
15  position to understand those rights when they were read to
16  him in English and when he read them himself and responded
17  to the inquiries by the agent in English.
18      The key here is whether the Court finds by a
19  preponderance of the evidence that the agent in
20  communicating with the defendant did so in a way that was
21  understood by the defendant, and whether or not the
22  defendant then voluntarily, knowingly and intelligently made
23  a decision to go ahead and communicate with the agent in
24  question.
25      As a general matter, the Court does take into

consideration the fact that the consular notification procedure was not followed in this case. That fact, however, is not fatal to the admission of the statement.

As the Supreme Court held in Sanchez-Llamas v. Oregon, 548 U.S. 331, 126 S. Ct. 2669 (2006) suppression is not the only means of vindicating Vienna Convention rights. Id. at 350, 2682. Rather, "a defendant can raise an Article 36 claim as part of a broader challenge to the volunariness of his statements to the police." Id. Here, defendant does not lodge a challenge to the voluntariness of his statements, and therefore his Vienna Convention argument is inapplicable. Importantly, however, even if the Vienna Convention right were considered by this Court, it would not lead to suppression.

The issue is whether or not he understood the rights that he had, which under our Constitution appear to be even broader than any rights generated by the Vienna Convention. In fact, the agent who testified said that he explained to him he didn't have to speak at all, that these were his rights, and nobody could take them away from him.

So the first issue for the Court to consider is, based on the testimony of the witnesses and the evidence that was presented, whether or not the agent in fact gave the defendant or advised the defendant of his rights. I find that the Government has proved by the preponderance of

1    the evidence that the defendant was advised of his rights.
2    He was advised of his rights by way of a form, which the
3    defendant appeared to have read, initialed and signed.  The
4    form and the manner in which it was signed and initialed is
5    consistent with the testimony of Agent Salavarria in the
6    manner in which he said he explained the rights to the
7    defendant, and that he also read the form to the defendant,
8    and then had the defendant initial and sign it.  I find by
9    preponderance of the evidence that that in fact occurred.
10           Having found that the defendant was advised of his
11   rights, the issue then becomes whether the Government has
12   proven by a preponderance of the evidence that the defendant
13   understood those rights and thereafter waived them
14   voluntarily, intelligently, and knowingly.
15           The Government makes a good point that a lot of the
16   information that was obtained from the defendant, which the
17   defendant acknowledged under cross-examination to have been
18   accurate, could only have come by way of a discourse between
19   two people who understood the conversation that they were
20   having.  Details about the distances of where a house was
21   located, the location of where somebody lived, the
22   relationship between parties, the monetary situation of an
23   individual, and many of the other different factors are only
24   facts that could have been elucidated from the defendant if
25   the defendant was understanding the questions that were

1  being asked of him and providing information in response.

2  This buttresses the Government's position in this
3  case that the defendant clearly understood the instructions
4  he was receiving that day, knew that he had the ability to
5  not give a statement, if he didn't want to, or ask for a
6  lawyer and chose to waive that right. This is also
7  buttressed by the testimony of the employer who came and
8  testified with regard to the defendant's proficiency in
9  English and ability to understand and follow instructions,
10 and it is finally supported by the documentary evidence.

11 For all of those reasons, taking into consideration
12 the fact that the defendant is a foreign national with some
13 amount of language difficulty and taking into consideration
14 the fact that the defendant was in a custodial interrogation
15 situation, and taking into consideration all of those
16 factors and the manner in which the interrogation was done,
17 the documentary evidence that was presented and all of the
18 factors that I indicated earlier, I find that the motion for
19 the defendant in this case to suppress the statement is
20 denied as the prosecution has met its burden by a
21 preponderance of the evidence as required by law.

22 Therefore, I will sign an order to this effect and
23 the statement will come in.

24                     *       *       *

25